**Jimmy Charles BEELER, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**Nos. F–82–574, O–82–575.**

Court of Criminal Appeals of Oklahoma.

Feb. 16, 1984.

Johnie O'Neal, Asst. Public Defender, Tulsa, for appellant.

Michael C. Turpen, Atty. Gen., Mary F. Williams, Asst. Atty. Gen., Marlin Davis, Legal Intern, Oklahoma City, for appellee.

## OPINION

CORNISH, Judge:

The appellant, Jimmy Charles Beeler, was convicted of Unlawful Possession of a Controlled Drug, and Unlawful Possession of Marijuana, Second Offense, and was sentenced to concurrent two (2) year prison terms. His prior two (2) year suspended sentence for Attempted Grand Larceny was also revoked. On appeal, he contends that the trial court erred in refusing to suppress evidence seized in searches of his person and vehicle. We affirm in part and reverse in part.

During the daylight hours of October 28, 1981, police officers parked just west of a Tulsa residence and walked toward the house to serve a search warrant for narcotics. As they did so, they saw the appellant and three other men, including the owner of the residence, emerge from a door on the west side of the house.

The men did not appear to be armed, but the officers were concerned that they might be carrying drugs out of the residence. Accordingly, they stopped the men, identified and served the warrant upon the owner, then frisked them. Two of the men were released, but appellant was ordered to remove the items from his pockets. He produced an oblong bottle believed to contain Phencyclidine (PCP), and was placed under arrest.

The officers then executed the search warrant for the premises. They searched a pickup truck parked on the front lawn of the residence under authority of a portion of the warrant directing the search of the "house, building and premises, the curtilage and the appurtenances thereunto belonging". A baggie of marijuana was seized from the truck, and, when appellant claimed ownership of the vehicle, he was also placed under arrest for possession of the marijuana.

We conclude that the search of the appellant's person was unlawful. The State offers three justifications for the search. It contends that the search was authorized by the very terms of the warrant. The warrant is set out in pertinent part in the appendix.

■ As a general rule, search warrants are to be strictly construed, and the "place" to be searched is limited to the "place" described therein. *McCormick v. State*, 388 P.2d. 873 (Okl.Cr.1964). The command in the instant warrant "to make search of said person" clearly relates to the earlier description of persons "ke[eping], possess[ing] and conceal[ing]" controlled substances on the described premises, in other words, "the above named defendant" —i.e., "John Doe"—and "other persons in whose possession he [John Doe] has placed it for the purpose of concealment."

There is no suggestion that appellant is the "John Doe" referred to in the warrant. "John Doe" is described in the search warrant affidavit as "the occupant" of the house. In this case, one of the appellant's companions was determined to be the owner of the house. Consequently, the State's argument depends upon the characterization of appellant as one of the unnamed persons in "possession" of the controlled drugs.

The warrant leaves to the officers the determination of those individuals in possession of illegal substances, and thus subject to search. In reality, it merely directs the performance of a duty arising even in the absence of the command in the warrant, i.e., that in the execution of a search warrant officers should seize persons committing offenses in their presence, and search such persons incident thereto. The real inquiry is whether the defendant was participating in the unlawful activity discovered by the search. See *Salmon v. State*, 2 Md.App. 513, 235 A.2d 758 (1967).

Stated more broadly, the issue under such a warrant is whether the officers had probable cause to believe that the arrestee was committing a misdemeanor in the presence of the officers, or was committing or had committed a felony. See *Haley v. State*, 7 Md.App. 18, 253 A.2d 424 (1969).

■ Accordingly, the contention that the search was authorized by the terms of the warrant merges with the State's further contention that the search was incident to an arrest based on probable cause to believe that appellant was committing the crime of possession of controlled substances.

The test of probable cause is

'[W]hether, at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense.'

*Dick v. State*, 596 P.2d 1265, 1267 (Okl.Cr. 1979) [quoting from *Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)]. One does not have probable cause unless he has information or facts which, if submitted to a magistrate, would require issuance of an arrest warrant. Mere suspicion is not enough. *Dick v. State*, supra; *Greene v. State*, 508 P.2d 1095 (Okl.Cr. 1973).

At the time of the search, the officers may be presumed to have known the following: According to the search warrant affidavit, dated the day of the search, the occupant had offered to sell drugs to a confidential informant in the residence within the previous twenty-four hours. A search warrant had issued reciting probable cause to believe that drugs were concealed on or about the residence. As the officers approached the house to serve the warrant, the appellant and three other men, including the owner, exited the residence.

■ We find that probable cause has not been shown. Where probable cause is the standard, a search or seizure of a person must be supported by probable cause particularized with respect to that person. That requirement may not be undercut by pointing to the coincidental existence of probable cause to search or seize another or to search the premises where the person may happen to be. *Ybarra v. Illinois*, 444 U.S. 85, 91, 100 S.Ct. 338, 342, 62 L.Ed.2d 238 (1979).

■ Accordingly, the fact that probable cause existed in this case to search the residence and the occupant would not justify the search of appellant, based on his mere presence at the residence and in the company of the owner. Moreover, the assumption that any one on the premises could be involved in drug trafficking, arising from the officers' knowledge that drugs were for sale at the residence, would not be sufficient to justify full scale searches of those present. *Id.* at 106, 100 S.Ct. at 350 (Rehnquist, J., dissenting).

■ There was no probable cause to believe that any and all persons at the premises would be involved in the drug traffic. There was no indication that the premises were frequented by drug buyers, nor that anyone had ever been seen purchasing drugs on the premises. *Id.* at 90, 100 S.Ct. at 341–342. Compare *Commonwealth v. Smith*, 370 Mass. 335, 348 N.E.2d 101 (1976). In *Smith*, probable cause was established by, inter alia, an informant's observations of the occupant selling drugs to other persons on the premises, and police surveillance disclosing known drug traffickers entering and leaving the apartment, *id.* at 106; and observations by police and the informant of such nature and frequency to raise the probability that no one unconnected with the illegal activity was likely to be at the premises. *Id.* at 107, n. 12.

■ Persons may visit even suspect premises for valid reasons. There was no probable cause, as versus mere suspicion, to believe that appellant was engaged in drug trafficking at the time of his visit.

The State's reliance upon the timing of appellant's departure from the premises, i.e., as the officers approached with the search warrant, is not persuasive. The door chosen was in line of sight as the officers walked toward the house, and there is no indication that the men made any attempt to escape the officers or discard or destroy evidence.

■ Failing in its warrant and probable cause contentions, the State argues that the officers were acting in good faith, and that we should approve an exception to the exclusionary rule to validate such conduct. We must decline to do so. As recognized by the Supreme Court of our sister state of Colorado, a majority of the United States Supreme Court has not recognized a good faith exception to the exclusionary rule, and it would be inappropriate for a state court to alter established Fourth Amendment doctrine by approving such an exception. *People v. Quintero*, 657 P.2d 948, 950 (Colo.1983) (one judge dissenting). In addition, given the State's reliance in part on *United States v. Williams*, 622 F.2d 830 (5th Cir.1980), cert. den., 449 U.S. 1127, 101 S.Ct. 946, 67 L.Ed.2d 114, the remarks of the California Supreme Court are instructive:

> The Attorney General calls our attention to the en banc decision of the Fifth Circuit in *United States v. Williams* (1980) 622 F.2d 830, in which 13 of 24 judges announced in dictum their view that the exclusionary rule should not bar admission of evidence obtained by police officers acting "in good faith" even if its seizure involved a technical violation of the Fourth Amendment. The United States Supreme Court, however, has never endorsed that view, and has frequently required the suppression of evidence in cases which the police arguably were acting in good faith. (See, e.g., *Robbins v. California* (1981) 453 U.S. 420, 101 S.Ct. 2841, 69 L.Ed.2d 744; *United States v. Chadwick* (1977) 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538.) Adoption by this court of a doctrine limiting the exclusionary rule to searches and seizures conducted "in bad faith," as urged by the Attorney General, would appear barred by *Mapp v. Ohio* (1961) 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 in which the Supreme Court ruled that "all evidence obtained by searches and seizures in violation of the [United States] Constitution is, by that same authority, inadmissible in a state court" (367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081), and subsequent decisions applying that rule.

*People v. Teresinski*, 30 Cal.3d 822, 180 Cal.Rptr. 617, 640 P.2d 753, 758 (1982), Note 6 (one judge concurring and dissenting; one judge dissenting to the denial of rehearing).

We conclude that the search of appellant's person was unlawful, and that the judge erred in refusing to suppress the drugs seized from appellant's person. However, we find that the search of appellant's vehicle was lawful.

■ Appellant's contention that the warrant did not sufficiently describe the vehicle as an area to be searched is without merit. The warrant, set out in the appendix, directed the search of the "house, building and premises, the curtilage thereof and the appurtenances thereunto belonging." As stated in *Leslie v. State*, 294 P.2d 854 (Okl.Cr.1956) (Syllabus):

> A search warrant, directed to search specific described property, "together with the curtilage and the appurtenances thereunto belonging," was sufficient to cover the automobile of the defendant standing on the driveway adjacent to the house and within the curtilage of the described property.

The pickup truck was parked in the yard of the residence, clearly within the "curtilage". See definition of "curtilage" in *Luman v. State*, 629 P.2d 1275 (Okl.Cr.1981). The fact that the vehicle did not belong to the owner of the premises cannot be regarded as significant, since it was not revealed to the officers until after the search.

■ Appellant further alleges that the search of the vehicle was not supported by probable cause, since the affidavit for the warrant did not mention a vehicle. However, probable cause to believe that the item to be searched for may be found in the place to be searched need not be based on

direct observation, but may arise out of the type of crime, the nature of the missing items, the extent of the suspect's opportunity for concealment and normal inferences as to where a criminal might likely hide the items. See *United States v. Spearman,* 532 F.2d 132 (9th Cir.1976).

 In this case, the affidavit related that the occupant of the residence had, very recently, offered drugs for sale to a confidential informant visiting the residence. The occupant told the informant to return any time he wished to buy such substances. Reading the affidavit in a commonsense rather than hyper-technical fashion, *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *Mills v. State,* 594 P.2d 374 (Okl.Cr. 1979), it clearly showed that such substances would be available at the premises for sale. The magistrate was thus justified in directing the search of the residence and immediate environs, i.e., "the curtilage thereof and appurtenances thereunto belonging." The vehicle was within the curtilage of the residence, and was subject to search. *Leslie v. State,* supra.

 In conclusion, the trial court erred in refusing to suppress the phencyclidine seized from appellant's person. Accordingly, the judgment and sentence for Unlawful Possession of Controlled Drug is REVERSED and REMANDED. However, the court was correct in declining to suppress the marijuana seized from appellant's pickup truck, and the judgment and sentence for Unlawful Possession of Marijuana, Second Offense, is AFFIRMED. The order revoking appellant's previous suspended sentence for Attempted Grand Larceny is fully supported by the evidence of his unlawful possession of marijuana, and is accordingly AFFIRMED. Cf. *Ward v. State,* 585 P.2d 355 (Okl.Cr.1978) (order revoking suspended sentence based on failure to report is valid irrespective of the invalidity of an alternative ground for revocation).

BUSSEY, P.J., concurs.

BRETT, J., concurs in part and dissents in part.

APPENDIX

THE STATE OF OKLAHOMA,

Plaintiff,

—vs—

JOHN DOE,

Defendant.

IN THE NAME OF THE STATE OF OKLAHOMA:

To any Sheriff, Policeman or Law Enforcement Officer in the County of Tulsa, Oklahoma:

Probable cause having been shown on this date before me by Cpl. G.L. Isaacs for believing the following described property: certain controlled dangerous substances listed in the Schedules of the Controlled Dangerous Substance Act of the State of Oklahoma, to wit: Marijuana and Phencyclidine is now being kept, possessed and concealed by the above named defendant, or by other persons in whose possession he has placed it for the purpose of concealment, at or upon or within a certain vehicle and/or house, building or premises, the curtilage thereof and the appurtenances thereunto belonging, in Tulsa County, Oklahoma, described as follows: A single story, single-family residence located in the 2800 block of East 45th St. North. The residence is composed of white colored wood. The residence has a flat type roof. The front of the residence faces north. There is a concrete driveway extending south from East 45th St. North to an attached carport at the west end of the residence. This structure is the fourth structure east of North Delaware Avenue on the south side of East 45th St. North. The numbers "2818" appear west of the front door on the front of the residence. This residence is more commonly known as 2818 East 45th St. North, which is in the City of Tulsa, Tulsa County, State of Oklahoma.

The affidavits being positive that the above described property is on the person, or in the place to be searched and therebeing a likelihood that said property above described will be destroyed, moved or concealed,

YOU ARE THEREFORE COMMANDED at any time of the day or night to make search of said person, vehicle and/or house, building and premises, the curtilage there of and the appurtenances thereunto belonging for the described property, and if found to seize the same and safely keep it, and bring it before me at the Tulsa County Courthouse in accordance with the subsequent order of the Court, and make return hereof within Ten days.

BRETT, Judge: concurs in part and dissents in part:

I concur in the reversal of the conviction for Unlawful Possession of a Controlled Drug but respectfully dissent to the affirmance of the conviction for Unlawful Possession of Marijuana. I disagree with my colleagues' opinion that the fact that the vehicle did not belong to the occupant of the premises is insignificant. Indeed, this is the very fact that distinguishes the present case from *Leslie v. State*, 294 P.2d 854 (Okl.Cr.1956).

As in all cases wherein this Court has condoned the search of an automobile parked within the curtilage, the vehicle searched in *Leslie* was owned by the occupant of the house for which the search warrant was issued. My colleagues apparently think that *Leslie* is controlling in the case at bar because the only person who testified at trial, police officer Sam King, "thinks" that the officers did not know the car belonged to the defendant until after the search. This failure to determine which car, if any, belonged to the occupant of the house neither brings this case within the purview of *Leslie* nor justifies the search. The officers easily ascertained which person was the occupant of the house so that the search warrant could be served upon him. They could have just as easily ascertained the ownership of the several cars parked within the curtilage.

The authorities had no probable cause to believe that anyone present other than the occupant was violating the law. Nothing occurred after the police arrived to give them any reason to suspect the appellant of criminal activity or to believe contraband was concealed in his car. The law is well settled that a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person. *Ybarra v. Illinois*, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1980). I would extend the application of *Ybarra* and hold that an automobile's presence within the curtilage of a house described in a search warrant to search the house will not, without more, authorize a search of the automobile.

If the automobile belongs to the occupant of the house described in the warrant and is parked within the curtilage, the search is permissible under *Leslie*, 294 P.2d 854. But if the officers know or should know that the automobile does not belong to the occupant of the premises, the search is not based upon probable cause or anything more than guilt by association and is therefore impermissible. Appellant's motion to suppress the evidence illegally obtained in the case at bar should have been granted.