## JOE HUTSON v. STATE.

No. A-8322.   July 22, 1932.
(13 Pac. [2d] 216.)

Ridings & Drennan, for plaintiff in error.

J. Berry King, Atty. Gen., and C. N. Ernest, Co. Atty., for the State.

EDWARDS, J.   The plaintiff in error, hereinafter called defendant, was convicted in the county court of Grant county on a charge of having the unlawful possession of intoxicating liquor and was sentenced to pay a fine of $250 and to serve 30 days in the county jail.

At the time charged, defendant while driving an automobile on the highway of Garfield county had a collision with another car.   He left the scene.   The sheriff and a deputy were called and appeared on the scene in about thirty minutes and followed defendant into Grant county and arrested him at the home of one McCart. They then searched the automobile which he had been driving and in which they found ten gallons of whisky and some empty containers.   The officers were able to follow the car by reason of the fact that in the collision it had blown out a tire and left a mark on the pavement.

452

The only contention made is that the officers of Garfield county were without authority in Grant county and in arresting defendant were acting only in the capacity of private persons; that the arrest was unlawful and the subsequent search therefore unlawful and the evidence inadmissible. The question presented goes only to the admissibility of the evidence and not to the jurisdiction of the court over the person of defendant. The legality of the arrest to give the court jurisdiction of the person of defendant appears not to have been raised, but the validity of the arrest as a basis for the admissibility of the evidence procured by search after arrest is questioned. The legality of the arrest was not a matter for the consideration of the jury, but a question for the court to pass on when an objection to the evidence was raised by a motion to suppress. As stated, the court heard testimony on that point and must have arrived at the conclusion that the arrest was legal and the evidence admissible. The presumption being that a public officer does his duty, it was incumbent on defendant to show the arrest was illegal and the subsequent search illegal. There is no direct statutory authority for the arrest. Defendant objected to the introduction of the state's testimony of the finding of the whisky in his car. In the hearing on the motion to suppress, the deputy sheriff testified he was called and informed of the wreck by one of the parties in the other car. The sheriff testified he arrested defendant for a felony, driving a car while drunk, and that he searched the car after having made the arrest. Defendant did not take the stand and offered no testimony. There is a surprising dearth of authority on the question raised. Some of the books lay down a rule which is hardly borne out by the cases cited. 2 R. C. L. 470, n. 1. Some of the cases touching the question are cases in

which civil liability only is involved. This is so of the case of McCaslin v. McCord, 116 Tenn. 693, 94 S. W. 79, 83, 8 Ann. Cas. 245. The statute there is the same as ours. The court said:

"* * * It will be observed that an officer, in addition to the right conferred upon a private citizen, is given the right to arrest without a warrant, 'on a charge made, upon a reasonable cause, of the commission of a felony by the person arrested.' Section 6997, subsec. 4. In respect of private persons, the language is, 'when the person arrested has committed a felony' (7002 [2], and, 'when a felony has been committed' (section 7002 [709 (3)]). The difference in phraseology is significant. A private person making an arrest for an offense not committed in his presence, in order to justify must be able to show by a preponderance of the evidence that a felony has been committed; on proving this, he may complete his justification, by showing that he had reasonable cause to believe that the person arrested committed it. Section 7002 (3). On the other hand, an officer may justify by showing that a charge had been made of the commission of a felony, and that he had reasonable cause to believe that such felony had been committed and that the person arrested had committed it. * * *

"We deem it proper to say that we do not think it was within the contemplation of our statutes that private citizens of one county should take it upon themselves to go into other counties, without a warrant, in search of criminals, except in cases of fresh pursuit of a fleeing felon endeavoring to avoid immediate capture, in an original arrest, or on immediate pursuit after arrest and escape. * * *

"It is true the person the defendants were searching for [710] had been previously arrested and lodged in the jail of Henderson county upon a charge of arson, a felony, and was there awaiting his trial on appeal to the Supreme Court, when he escaped, and went over into Benton county and thence into Gibson county; but the defendants in

the latter county occupied the status only of private citizens, they had no warrant, the person they were seeking to arrest had never been in their custody, had not escaped from them, and they were not in fresh pursuit, and the dwelling they entered was not that of the person to be arrested, but the home of a stranger. * * *"

This language is strong, but it recognizes an exception in the case of "fresh pursuit."

In the case of State v. Cody, 116 Or. 509, 241 Pac. 983, under a statute substantially the same as ours, the defendant killed a sheriff who was attempting to arrest him, was convicted of murder, and sentenced to death; the court, in affirming the judgment, in syllabus 5 held:

"Under Or. L. §§ 1763, 1768, where sheriff was informed that accused was charged with having committed a felony, and had reason to believe accused had committed the crime, he was authorized to arrest accused, though he had no warrant, and was not in the county of which he was sheriff at the time."

The court in that case also gives consideration to the fact that defendant submitted to arrest, before committing the homicide.

The right of an officer to arrest without warrant is defined and limited by sections 2471, 2473, 2474, 2478, 2482, and 5900, Comp. St. 1921. The right of a private person to arrest without a warrant is defined and limited by section 2477, Comp. Ct. 1921.

An officer within the limits or geographical subdivision of which he is an officer has more authority than a private citizen in at least one particular. This authority is conferred by the fourth division of section 2471, Comp. St. 1921, as follows:

"* * * Fourth. On a charge, made upon reasonable cause, of the commission of a felony by the party arrested."

This authority is in excess and in addition to the authority given a private person to make an arrest. In all other particulars, sections 2471 and 2477 are identical. Outside the geographical limits of the officer's authority the officer acts as a private person, except it is generally held that in a fresh pursuit or in case of escape an officer need not stop at the boundary of his bailiwick.

Surely it was never the intention of the Legislature to forbid arrest outside his county by a peace officer who is informed of the commission of a felony and who proceeds at once to the scene and within as short a space of time as shown by the evidence in this case pursues the person committing the crime. To say the officer in such a case shall not pursue beyond the boundary of his county is absurd. To follow such a contention to its logical conclusion might result thus: A felonious homicide is committed, an officer appears at the scene within a few minutes and is informed of the crime and of the direction of flight of the perpetrator. He pursues and is in sight of the fleeing criminal only to see him cross the imaginary line, the boundary of his county. In such case, shall it be said that a peace officer of the state is so impotent that he must cease his pursuit and let the criminal escape? This is not the law. Where a felony has been committed and a sheriff makes a fresh pursuit of the person, whom he has reasonable cause to believe committed the crime, he may make lawful arrest of such person at any place he may apprehend him in the state as a result of such fresh pursuit. What constitutes a fresh pursuit will depend upon the particular circumstances in each case. Under the circumstances shown we are of the opinion the

arrest followed a fresh and continuous pursuit and was lawful, and the search following such arrest was likewise lawful and the evidence obtained thereby admissible.

The case is affirmed.

DAVENPORT, P. J., and CHAPPELL, J., concur.