Dear Fire Marshal Wilson,
¶ 0 This office has received your request for an Attorney General Opinion in which you ask, in effect, the following questions:
1. As certified Peace Officers of this State do State FireMarshal Agents have the authority to arrest and/or detainsuspects for crimes other than arson?
 2. Do State Fire Marshal Agents have the authority to issuecitations for misdemeanors which are unrelated to the crime ofarson in order to avoid a full-scale arrest in situations wherethe misdemeanor violation might not warrant arrest, but doeswarrant lesser action?
¶ 1 Generally, both your questions deal with the scope of authority which State Fire Marshal Agents possess. Each question, however, is dealt with herein by a separate discussion.
 I.
¶ 2 Your request states that all State Fire Marshal Agents ("Agents") are fully certified peace officers through the Council on Law Enforcement Education and Training. The central issue of your first question is what limitation, if any, do the Agents have on the exercise of their police powers.
¶ 3 The Agents are granted the authority of peace officers pursuant to Title 74 which provides:
 The State Fire Marshal or his deputies may make investigations of arson or suspected arson, and if he shall be of the opinion that there is evidence sufficient to charge any person with the crime of arson, or with the attempt to commit the crime of arson, or of conspiracy to defraud, or any criminal conduct in connection with such fire, he and his arson investigators shall be peace officers and have and exercise all the powers and authority of other peace officers, relative to the investigation of arson. . . .
74 O.S. 1991, § 324.9[74-324.9] (emphasis added).
¶ 4 Due to the limiting statutory language, "relative to the investigation of arson," together with a listing of crimes that are related only to arson, this statutory provision indicates an intent by the Legislature to restrict Agents to exercising their police powers with regard to crimes related to arson. The restrictive language would be meaningless and unnecessary if the Legislature had intended to grant Agents full police power. The Legislature is never presumed to have done a vain thing.Loffland Brothers Equipment v. White, 689 P.2d 311, 314 (Okla. 1984) citing Farris v. Cannon, 649 P.2d 529 (Okla. 1982).
¶ 5 The cardinal rule of statutory construction is to ascertain the legislative intent through an examination of the statute's language. Grand River Dam Authority v. State, 645 P.2d 1011,1918 (Okla. 1982). When the intent of the Legislature is plainly expressed in the statute, it must be followed without further inquiry or statutory construction. See, e.g., In re HammProduction Company, 671 P.2d 50, 52 (Okla. 1983); HughesDrilling Company v. Morgan, 648 P.2d 32, 35 (Okla. 1982). It is presumed the Legislature, in the statute, said what it meant and meant what it said. Fuller v. Odom, 741 P.2d 449, 453 (Okla. 1987).
¶ 6 The Legislature has, in many instances, given agencies the authority to commission its peace officers with full police powers together with statewide jurisdiction.[1] Likewise, the Legislature has limited the enforcement authority and/or the territorial jurisdiction of certain law enforcement officers.[2]
¶ 7 Additionally, the fact that the Agents are certified through the Council on Law Enforcement Education and Training does not grant Agents, or other peace officers, unlimited police power and authority. In Staller v. State, 932 P.2d 1136
(Okla.Crim.App. 1996), the Oklahoma Court of Criminal Appeals specifically stated:
 These statutes [70 O.S. 1991, § 3311[70-3311], et seq., 21 O.S. 1991, § 99[21-99]; 11 O.S. 1991, § 34-101[11-34-101] and 11 O.S. 1991, § 27-113[11-27-113]], setting forth the general definitions of peace officers and the provisions of the Council on Law Enforcement Education and Training (CLEET), do not support the argument that a peace officer's powers are not limited by any jurisdictional boundaries within the State. . . . Therefore, they cannot empower a peace officer in their employ with greater powers than they have.
Id. at 1138.
¶ 8 While the Staller case dealt with the territorial jurisdiction of city police officers, it is equally applicable to those peace officers that are statutorily limited to investigating certain areas of crime.
¶ 9 Perhaps in response to the Staller case, a recent statute has been enacted which provides that peace officers may, through agreement with other agencies, broaden their investigatory and territorial authority.[3] Effective April 7, 1997, all
peace officers (except certain municipal peace officers) of the State may enforce all criminal laws of the State under the following circumstances:
 1. In response to an emergency involving an immediate threat to human life or property;
 2. Upon the prior consent of the head of a state law enforcement agency, the sheriff or the chief of police in whose investigatory or territorial jurisdiction the exercise of the powers occurs;
 3. In response to a request for assistance pursuant to a mutual law enforcement assistance agreement with the agency of investigatory or territorial jurisdiction;
 4. In response to the request for assistance by a peace officer with investigatory or territorial jurisdiction; or
5. While the officer is transporting a prisoner.
21 O.S. Supp. 1997, § 99a[21-99a].
¶ 10 This new statute further provides:
 B. While serving as peace officers of the State of Oklahoma and rendering assistance under the circumstances enumerated above, peace officers shall have the same powers and duties as though employed by and shall be deemed to be acting within the scope of authority of the law enforcement agency in whose or under whose investigatory or territorial jurisdiction they are serving.
Id.
¶ 11 This new statute does not grant unlimited authority to Agents to enforce all criminal laws at all times. It does, however, allow agencies to enter into agreements with other agencies which will, in effect, broaden both investigatory and territorial jurisdiction of those peace officers which have limited jurisdiction.
 II.
¶ 12 Your second question asks whether the Agents have the authority to issue citations for misdemeanors in order to avoid a full-scale arrest in situations where the violation might not warrant arrest, but does warrant lesser action. While this question, like question 1, relates to an Agent's police authority, it appears to arise from the statutory provisions which require the State Fire Marshal's office to make certain inspections. Since these inspections, which carry misdemeanor penalties, are not made in response to a fire and do not relate to the crime of arson, it has been questioned whether the Agents (with the statutorily limited authority discussed above) may enforce these misdemeanor penalties.
¶ 13 There is no explicit authority for Agents to enforce the statutes relating to the inspection of smoke detectors required at 74 O.S. Supp. 1997, § 324.11a[74-324.11a] and the inspection of buildings called for at 74 O.S.Supp. 1997, § 317[74-317]. As discussed above, 74 O.S. 1991, § 324.9[74-324.9] limits Agents to investigating and making arrests related to arson, attempted arson and conspiracy to defraud in relation to fires. "[A]n agency created by statute may only exercise the powers granted by statute and cannot expand those powers by its own authority." Marley v. Cannon,618 P.2d 401, 405 (Okla. 1980) (citations omitted).
¶ 14 Therefore, Agents do not have the statutory authority to enforce, through either an arrest or a citation, the misdemeanors related to the inspection of smoke detectors and buildings unless those crimes are related to an investigation involving arson.
¶ 15 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. Pursuant to 74 O.S. 1991, § 324.9[74-324.9], State Fire MarshalAgents have the authority to arrest and/or detain suspects forthe crime of arson, the attempt to commit the crime of arson, orconspiracy to defraud, or any criminal conduct in connection withsuch fire and relative to the investigation of arson.
 2. Agents of the State Fire Marshal's office do not have thestatutory authority to enforce, issue citations, or make arrestsfor misdemeanors related to the inspection of smoke detectors andbuildings unless those crimes are related to an investigationinvolving arson.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
GRETCHEN ZUMWALT ASSISTANT ATTORNEY GENERAL
[1] For examples, see —
Highway Patrol: 47 O.S. Supp. 1997, § 2-117[47-2-117];
Lake Patrol: 47 O.S. 1991, § 2-135[47-2-135];
 Oklahoma Bureau of Narcotics and Dangerous Drugs Control: 63 O.S. 1991, § 2-103[63-2-103];
 State Auditor and Inspector: 64 O.S. Supp. 1997, § 87c[64-87c];
 State Board of Medical Licensure and Supervision: 59 O.S. Supp. 1997, § 512[59-512];
Campus Police: 74 O.S. 1991, § 360.17[74-360.17](A);
 Oklahoma State Bureau of Investigation: 74 O.S. 1991, § 150.8[74-150.8](B);
 Oklahoma Horse Racing Commission: 3A O.S. 1991, § 203.3[3A-203.3](C)(2);
 District Attorney Investigators: 19 O.S. Supp. 1997, § 215.35A[19-215.35A].
[2] For examples, see —
 Oklahoma ABLE Commission Agents and Inspectors: 37 O.S. 1991 § 512[37-512](A);
 Oklahoma Department of Wildlife Game Wardens: 29 O.S. 1991 § 3-201[29-3-201](B);
 Department of Mental Health and Substance Abuse Services: 43A O.S.Supp. 1997, § 2-202[43A-2-202](18);
 Department of Corrections Peace Officers: 57 O.S.Supp. 1997, § 510[57-510](A)(3);
 Oklahoma Board of Pharmacy Inspectors: 59 O.S.Supp. 1997, § 353.7[59-353.7](5);
OSBI Rangers: 74 O.S. 1991 § 150.13[74-150.13](A);
 Oklahoma Tourism and Recreation Department Park Rangers: 74 O.S.Supp. 1997, § 1811[74-1811](4);
 Oklahoma Capitol Patrol: 74 O.S.Supp. 1997, § 1811.4E[74-1811.4E](C).
[3] While there is authority that this type of agreement was acceptable prior to the enactment of 21 O.S. Supp. 1997, § 99a[21-99a],
there is now statutory authority to rely upon in entering into such agreements. In fact, the Staller case recognized three exceptions to the general rule that a peace officer has no authority outside his jurisdiction. Those exceptions are: "(1) hot pursuit; (2) when one municipality has requested the assistance of another . . .; and (3) service of an arrest warrant." Staller at 1139.